1  PAUL L. REIN, State Bar No. 43053
   CELIA MCGUINNESS, State Bar No. 159420
2  CATHERINE M. CABALO, State Bar No. 248198
   LAW OFFICES OF PAUL L. REIN
3  200 Lakeside Drive, Suite A
   Oakland, CA  94612
4  Telephone:  (510) 832-5001
   Facsimile:  (510) 832-4787
5  reinlawoffice@aol.com

6  Attorneys for Plaintiff
   ABIGAYIL TAMARA
7

8  MICHAEL T. LUCEY (SBN: 099927)
   MICHAEL D. BRUNO (SBN: 166805)
9  GENEVA A. COLLINS (SBN: 187023)
   GORDON & REES LLP
10 275 Battery Street, Suite 2000
   San Francisco, CA 94111
11 Telephone: (415) 986-5900
   Facsimile: (415) 986-8054
12 Mlucey@gordonrees.com
   Mbruno@gordonrees.com
13 Gcollins@gordonrees.com

14 Attorneys for Defendants
   STANFORD HEALTH CARE (erroneously
15 sued herein as "THE BOARD OF
   DIRECTORS OF THE STANFORD
16 HOSPITAL AND CLINICS and THE
   LELAND STANFORD JR., UNIVERSITY
17 BOARD OF TRUSTEES")

18
                   UNITED STATES DISTRICT COURT
19                FOR THE NORTHERN DISTRICT OF CALIFORNIA

20

21 ABIGAYIL TAMARA,
                                          Case No. 5:15-cv-02158 EJD
22       Plaintiff,
                                          Civil Rights
23 v.
                                          **CONSENT DECREE AND [PROPOSED]**
24 THE BOARD OF DIRECTORS OF THE          **ORDER AS TO INJUNCTIVE RELIEF**
   STANFORD HOSPITAL AND CLINICS;         **ONLY**
25 THE LELAND STANFORD, JR.,
   UNIVERSITY BOARD OF TRUSTEES; and
26 DOES 1-20, Inclusive,

27       Defendants.

28

CONSENT DECREE & ORDER AS
TO INJUNCTIVE RELIEF ONLY

1. Plaintiff Abigayil Tamara filed a Complaint in this action on May 13, 2015, to enforce provisions of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, and California civil rights laws and to obtain recovery of damages for discriminatory experiences, denial of access, and denial of civil rights against Defendant Stanford Health Care (erroneously sued as "The Board of Directors of the Stanford Hospital and Clinic and The Leland Stanford, Jr., University Board of Trustees") ("Defendant"), relating to disability discrimination at Defendant'' public accommodations as of September 12, 2013, and continuing.  Plaintiff has alleged that Defendant's violated Title III of the ADA and sections 51, 52, 54, and 54.1 of the California Civil Code by failing to provide full and equal access to service dog users at the facilities at 3 Pasteur Drive, Stanford, California, known as Stanford Health Care. Defendant denied the allegations.

2. In order to avoid the costs, expense, and uncertainty of protracted litigation, Plaintiff and Defendants (together the "Parties") agree to entry of this Consent Decree and Order to resolve all claims regarding injunctive relief raised in the Complaint without the need for protracted litigation.  Accordingly, the Parties agree to the entry of this Order without trial or further adjudication of any issues of fact or law concerning Plaintiff's claims for injunctive relief.

**JURISDICTION:**

3. The Parties to this Consent Decree and Order agree that the Court has jurisdiction of this matter pursuant to 28 U.S.C. section 1331 for alleged violations of the Americans with Disabilities Act of 1990, 42 U.S.C. sections 12101 *et seq.* and pursuant to supplemental jurisdiction for alleged violations of California Civil Code sections 51, 52, 54, and 54.1.

WHEREFORE, the Parties to this Consent Decree hereby agree and stipulate to the Court's entry of this Consent Decree and Order, which provide as follows:

- 2 -

CONSENT DECREE & ORDER AS
TO INJUNCTIVE RELIEF ONLY

**SETTLEMENT OF INJUNCTIVE RELIEF:**

4. This Order shall be a full, complete, and final disposition and settlement of Plaintiff's claims against Defendants for injunctive relief that have arisen out of the subject Complaint.

5. Within 14 days of signing this agreement Defendants will implement the written service animal policy attached and incorporated herewith as Exhibit A.

6. Within 45 days of implementing the policy at Exhibit A Defendant will provide in-person training to its Guest Services and Risk Management personnel on the implementation of the policy. All other relevant employees will be trained on the implementation of the policy on a rolling basis as part of Defendant's usual workplace training practices.

7. Within 60 days of implementing the policy at Exhibit A Defendants will make this policy available to people with disabilities in alternative formats, including but not limited to making the policy available on its website in a format meeting WCAG 2.0, Level AA – or a substantially equivalent standard. For people with disabilities who cannot use the website, the policy will be made available upon request in Braille and large print format within a reasonable time.

**ENTIRE CONSENT DECREE AND ORDER:**

8. This Consent Decree and Order and **Exhibit A** constitute the entire agreement between the signing Parties on the matters of injunctive relief, and no other statement, promise, or agreement, either written or oral, made by any of the Parties or agents of any of the Parties that is not contained in this written Consent Decree and Order, shall be enforceable regarding the matters of injunctive relief described herein.

**CONSENT DECREE AND ORDER BINDING ON PARTIES AND SUCCESSORS IN INTEREST:**

9. This Consent Decree and Order shall be binding on Plaintiff, Defendants, and any successors-in-interest. Defendants have a duty to so notify all such successors-in-interest

of the existence and terms of this Consent Decree and Order during the period of the Court's jurisdiction of this Consent Decree and Order.

**MUTUAL RELEASE AND WAIVER OF CIVIL CODE SECTION 1542 AS TO INJUNCTIVE RELIEF ONLY:**

10. Each of the Parties to this Consent Decree and Order understands and agrees that there is a risk and possibility that, subsequent to the execution of this Consent Decree and Order, any or all of them will incur, suffer, or experience some further loss or damage with respect to the lawsuit that is unknown or unanticipated at the time this Consent Decree and Order is signed.  Except for all obligations required in this Consent Decree and Order, the Parties intend that this Consent Decree and Order apply to all such further loss with respect to the lawsuit, except those caused by the Parties subsequent to the execution of this Consent Decree and Order.  Therefore, except for all obligations required in this Consent Decree and Order, this Consent Decree and Order shall apply to and cover any and all claims, demands, actions, and causes of action by the Parties to this Consent Decree with respect to the lawsuit, whether the same are known, unknown, or hereafter discovered or ascertained, and the provisions of Section 1542 of the California Civil Code are hereby expressly waived.  Section 1542 provides as follows:

> **A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.**

This waiver applies to the injunctive relief aspects of this action only and does not include resolution of Plaintiff's claims for damages, attorneys' fees, litigation expenses, and costs.

11. Except for all obligations required in this Consent Decree and Order –and exclusive of Plaintiff's continuing claims for damages, statutory attorneys' fees, litigation expenses, and costs– each of the Parties to this Consent Decree and Order, on behalf of each, their respective agents, representatives, predecessors, successors, heirs, partners, and assigns,

releases and forever discharges each other Party and all officers, directors, trustees, shareholders, subsidiaries, joint venturers, partners, employees, agents, attorneys, insurance carriers, heirs, predecessors, and representatives of each other Party, from all claims, demands, actions, and causes of action of whatever kind or nature, presently known or unknown, arising out of or in any way connected with the lawsuit.

**TERM OF THE CONSENT DECREE AND ORDER:**

12. This Consent Decree and Order shall be in full force and effect for a period of sixty (60) months after the date of entry of this Consent Decree and Order by the Court.

**SEVERABILITY:**

13. If any term of this Consent Decree and Order is determined by any court to be unenforceable, the other terms of this Consent Decree and Order shall nonetheless remain in full force and effect.

**SIGNATORIES BIND PARTIES:**

14. Signatories on the behalf of the Parties represent that they are authorized to bind the Parties to this Consent Decree and Order.  This Consent Decree and Order may be signed in counterparts and a facsimile signature shall have the same force and effect as an original signature.

**END OF PAGE.**
**SIGNATURES CONTINUE ON THE NEXT PAGE AND ORDER IS AT THE END OF THE DOCUMENT.**

|   |   |   |
|---|---|---|
| 1 | Dated: May 12, 2016 | PLAINTIFF ABIGAYIL TAMARA |
| 2 | | */s/ Abigayil Tamara* |
| 3 | | ABIGAYIL TAMARA |
| 4 | | |
| 5 | Dated: _____, 2016 | DEFENDANT STANFORD HEALTH CARE |
| 6 | | |
| 7 | | By: _____ |
| 8 | | Print name: _____ |
| 9 | | Title: _____ |
| 10 | | |

APPROVED AS TO FORM:

Dated: 5.16, 2016

**LAW OFFICES OF PAUL L. REIN**

By: _____
CELIA McGUINNESS
Attorneys for Plaintiff
ABIGAYIL TAMARA

Dated: _____, 2016

GORDON & REES LLP

By: _____
MICHAEL D. BRUNO
Attorneys for Defendant
STANFORD HEALTH CARE (erroneously sued herein as "THE BOARD OF DIRECTORS OF THE STANFORD HOSPITAL AND CLINICS and THE LELAND STANFORD JR., UNIVERSITY BOARD OF TRUSTEES")

CONSENT DECREE & ORDER AS
TO INJUNCTIVE RELIEF ONLY

| | |
|---|---|
| 1  Dated: _____, 2016 | PLAINTIFF ABIGAYIL TAMARA |
| 2 | |
| 3 | _____ |
| 4 | ABIGAYIL TAMARA |
| 5 | |
| 6  Dated: May 11, 2016 | DEFENDANT STANFORD HEALTH CARE |
| 7 | By: _____ |
| 8 | Print name: MARY C. GAINES |
| 9 | Title: Admin. Director ELR |
| 10 | |
| 11  APPROVED AS TO FORM: | |
| 12 | |
| 13  Dated: _____, 2016 | **LAW OFFICES OF PAUL L. REIN** |
| 14 | By: _____ |
| 15 | CELIA McGUINNESS<br>Attorneys for Plaintiff<br>ABIGAYIL TAMARA |
| 16 | |
| 17  Dated: 5-11, 2016 | GORDON & REES LLP |
| 18 | By: _____ |
| 19 | MICHAEL D. BRUNO<br>Attorneys for Defendant<br>STANFORD HEALTH CARE (erroneously sued herein as "THE BOARD OF DIRECTORS OF THE STANFORD HOSPITAL AND CLINICS and THE LELAND STANFORD JR., UNIVERSITY BOARD OF TRUSTEES") |

- 6 -

CONSENT DECREE & ORDER AS
TO INJUNCTIVE RELIEF ONLY

**ORDER**

Pursuant to stipulation, and for good cause shown, IT IS SO ORDERED.

The Clerk shall close this file.

Dated: _5/20_, 2016

_____
Honorable Edward J. Davila
United States District Court Judge

PAUL L. REIN, State Bar No. 43053
CELIA MCGUINNESS, State Bar No. 159420
CATHERINE M. CABALO, State Bar No. 248198
LAW OFFICES OF PAUL L. REIN
200 Lakeside Drive, Suite A
Oakland, CA  94612
Telephone:  (510) 832-5001
Facsimile:  (510) 832-4787
reinlawoffice@aol.com

Attorneys for Plaintiff
ABIGAYIL TAMARA


MICHAEL T. LUCEY (SBN: 099927)
MICHAEL D. BRUNO (SBN: 166805)
GENEVA A. COLLINS (SBN: 187023)
GORDON & REES LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 986-5900
Facsimile: (415) 986-8054
Mlucey@gordonrees.com
Mbruno@gordonrees.com
Gcollins@gordonrees.com

Attorneys for Defendants
STANFORD HEALTH CARE (erroneously sued herein as "THE BOARD OF DIRECTORS OF THE STANFORD HOSPITAL AND CLINICS and THE LELAND STANFORD JR., UNIVERSITY BOARD OF TRUSTEES")

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ABIGAYIL TAMARA,<br><br>    Plaintiff,<br><br>v.<br><br>THE BOARD OF DIRECTORS OF THE STANFORD HOSPITAL AND CLINICS; THE LELAND STANFORD, JR., UNIVERSITY BOARD OF TRUSTEES; and DOES 1-20, Inclusive,<br><br>    Defendants. | Case No. 5:15-cv-02158 EJD<br><br>Civil Rights<br><br>**EXHIBIT A TO CONSENT DECREE AND [PROPOSED] ORDER AS TO INJUNCTIVE RELIEF ONLY** |

| | Last Approval Date: |
|---|---|
| ***Stanford Hospital and Clinics*** | September 2014 |
| **Name of Policy:**<br>Service Animals and Comfort/Emotional Support Dogs | Page 1 of 10 |
| **Departments Affected:**<br>All Departments | |

I. **PURPOSE:**
   A. To comply with requirements of the Americans with Disabilities Act (ADA), the Disabled Persons Act, the U.S. Department of Justice's revised final regulations implementing the ADA, the Unruh Civil Rights Act, and other laws and regulations related to persons with disabilities
   B. To ensure that **service animals** accompany patients and visitors with disabilities in all areas of Stanford Hospital & Clinics (SHC) where public access is normally allowed, which includes most patient areas, *except* as specified in sections IV (A - C, G).
   C. To provide guidelines for staff to identify service animals when they encounter a **dog or miniature horse** in the hospital.

II. **POLICY:**
   A. It is the policy of SHC that persons with disabilities will not be discriminated against and that they will have full and equal access, services and treatment.
   B. All patients and visitors accompanied by a dog or miniature horse that is individually trained to do work or perform tasks for a disabled person must be permitted to enter all areas of SHC open to the general public, which includes most patient areas.
   C. SHC staff shall use *minimal inquiry* when the work, service or tasks performed by the dog or miniature horse are not obvious and apparent.

III. **DEFINITIONS:**
   A. **Individual with a Disability** — A person who:
      1. Has a physical or mental impairment that substantially limits one or more major life activities;
      2. Has a record of such an impairment; or
      3. Is perceived by others as having such an impairment

   B. **Service Animal** — Only *dogs* (excludes other species of animals) that are individually ***trained to do work or perform tasks*** for people with disabilities qualify as service animals.

      I. Service animals ***recognize and respond*** to needs. Examples include, but are not limited to:
         a. Guiding vision impaired
         b. Alerting hearing impaired
         c. Pulling wheelchair
         d. Retrieving items

| *Stanford Hospital and Clinics* | Last Approval Date: September 2014 |
|---|---|
| **Name of Policy:** Service Animals and Comfort/Emotional Support Dogs | Page 2 of 10 |
| **Departments Affected:** All Departments | |

      e. Stability and ambulation
      f. Alerting or protecting person having seizure
      g. Reminding person to take medication
      h. Calming person with Post-Traumatic Stress Disorder during an anxiety attack
      i. Preventing or interrupting impulsive or destructive behavior
      j. Removing disoriented individuals from dangerous situations

C. **Comfort / Emotional Support Dogs**
   1. **ADA -** Dogs that solely provide companionship, comfort, and emotional support are *not service animals under the ADA*.
      a. Companionship, comfort and emotional support do not constitute work or tasks
   2. **California law —** Under the Unruh Civil Rights Act, the Department of Fair Employment and Housing *may* investigate denials of accommodation for access to public entities (ex: hospitals) regarding comfort/emotional support dogs.
      a. Denying accommodation of a **comfort/emotional support** dog in a public entity (ex: hospital) *<u>may</u>* result in a complaint to the Department of Fair Housing and Employment for violation of the Unruh Civil Rights Act.

D. **Direct Threat -** A significant risk of substantial harm to the health or safety of others that cannot be eliminated or mitigated by a reasonable modification of practices or procedures or the provision of auxiliary aids or services.
   1. SHC must complete an **individualized assessment** when determining whether the service animal poses a direct threat based upon:
      a. Reasonable judgment that relies on current medical knowledge or on the best available objective evidence;
      b. The nature, duration, and severity of the risk;
      c. Probability that the potential injury will actually occur; and
      d. Whether reasonable modifications of policies, practices or procedures or provisions of auxiliary aids or services will mitigate the risk.

E. **Fundamental Alteration —** A change that is so significant that it alters the nature of the facility or service offered. For example, *service animals* are generally prohibited from the operating room and burn units, which are not open to the public and require strict hygiene and protective barriers that could not be reasonably imposed on the service animal. Allowing a service animal in areas such as the operating room would require a fundamental alteration of the nature of the facility.

| *Stanford Hospital and Clinics* | Last Approval Date:<br>September 2014 |
|---|---|
| **Name of Policy:**<br>Service Animals and Comfort/Emotional Support Dogs | Page 3 of 10 |
| **Departments Affected:**<br>All Departments | |

IV.  **PROCEDURE:**
  A.  **Permitting Service Animals** - Service animals shall be permitted in all areas of SHC that are open to the public, including most patient areas, provided the service animal does not:
   1. Pose a direct threat; or
   2. Fundamentally alter SHC's operations, policies, practices or procedures.

  B.  **Excluding / Removing Service Animals and/or Comfort / Emotional Support Dogs -** Any decision to exclude service animals and/or comfort/emotional support dogs from SHC shall be made only after an *individualized assessment* that the animal poses a direct threat to the health or safety of others which cannot be mitigated by modifications of policies or procedures or the provision of auxiliary aids or services.

   1. The individualized assessment of direct threat shall be conducted by the department manager in consultation with other services, including, but not limited to Infection Control, Guest Services and Risk Management.
   2. The individualized assessment of direct threat must be based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence to ascertain:
     a. The nature, duration, and severity of the risk;
     b. The probability that the potential injury will actually occur; and
     c. Whether reasonable modifications of policies, practices or procedures or provisions of auxiliary aids or services will mitigate the risk

  C.  **Restricted Areas —** While service animals are generally permitted in the hospital, they are restricted from entering operating rooms and other sterile areas, and they *may* be restricted from patient care units housing immunosuppressed patients and isolation for infectious precautions, if SHC determines after an individualized assessment in accordance with Section IV.B that the service animal poses a direct threat to the health or safety of others or would fundamentally alters the nature of the goods, services, facilities, privileges, advantages, or accommodations SCH provides to the public.

  D.  **Staff Inquiry -** When it is not obvious or apparent what service, task or work the dog performs, staff may ask two questions **only**:
   1. Is the dog a service animal required because of a disability; and

| *Stanford Hospital and Clinics* | Last Approval Date:<br>September 2014 |
|---|---|
| **Name of Policy:**<br>Service Animals and Comfort/Emotional Support Dogs | |
| **Departments Affected:**<br>All Departments | Page 4 of 10 |

    2. What work or task has the dog been trained to perform?
        a. Under the ADA, staff must rely upon the patient or visitor's word that the dog is a service animal and the description of the service, task or work it performs.
        b. Utilize the chain of command if there is concern that the service animal poses a direct threat or would fundamentally alter SHC and the services provided.
        c. After activating internal chain of command, consult with other departments *as needed,* including but not limited to Infection Control, Guest Services and Risk Management.

E. **Staff must not**:
1. Ask about the nature or extent of the person's disability;
2. Require documentation to support service animal status (e.g., ID card, proof of certification and training);
3. Ask dog to demonstrate ability to perform service, task or work;
4. Refuse access based upon allergies and fear of dogs;
5. Treat patients and visitors with service animals less favorably;
6. Pet the service animal (May distract from assigned tasks);
7. Feed, clean, toilet or care for the service animal;
8. Ask patient, visitor or handler to remove service animal from premises, <u>**unless**</u> an individualized assessment of direct threat has been completed *(See* Sections B, C, G).

F. **Requirements for Service Animals** — Service animals must be under the handler's control at all times via at least one of the following:
1. Harness
2. Leash
3. Tether
4. Voice control
5. Motion / signal control
6. Other effective controls
7. **Exception** — The devices listed above need not be used if they:
    a. Interfere with the service animal's work; or
    b. Person's disability prevents using these devices

G. **Legitimate Reasons for Removing the Service Animal**
1. The dog poses a direct threat to the health or safety of patients, staff and/or other visitors that cannot be eliminated by a reasonable modification of the hospital's policies, practices, or procedures or the provision of auxiliary services;

| *Stanford Hospital and Clinics* | **Last Approval Date:**<br>September 2014 |
|---|---|
| **Name of Policy:**<br>Service Animals and Comfort/Emotional Support Dogs<br>**Departments Affected:**<br>All Departments | **Page 5 of 10** |

    2. Dog fundamentally alters the nature of alter the nature of the goods, services, facilities, privileges, advantages, or accommodations SHC provides to the public.
    3. Dog is out of control and handler does not take effective action to control it;
        a. Disruption (barking, running, jumping);
        b. Aggressive behavior (biting, lunging);
    4. Not housebroken;
    5. Poor hygiene;
    6. Dog is ill.

    **H.**    **Miniature Horses (IVIH)**
        *1.* They are not service animals under the ADA, however they must be accommodated where reasonable and if ***individually trained to do work or perform tasks*** for people with disabilities.
        2. The department manager, in consult with other departments *as needed,* must complete an ***individualized assessment*** to determine whether miniature horses can be accommodated. The four (4) assessment factors are:
            a. Whether the MH is housebroken;
            b. Whether the MH is under the owner or handler's control;
            c. Whether the facility can accommodate the miniature horse's type, size and weight; and
            d. Whether the MH's presence will not compromise legitimate safety requirements necessary for safe operations.

**V.**    **COMPLIANCE**

    A.    All workforce members including employees, contracted staff, students, volunteers, credentialed medical staff, and individuals representing or engaging in the practice at SHC are responsible for ensuring that individuals comply with this policy;
    B.    Violations of this policy will be reported to the Department Manager and any other appropriate Department as determined by the Department Manager or in accordance with hospital policy. Violations will be investigated to determine the nature, extent, and potential risk to the hospital. Workforce members who violate this policy will be subject to the appropriate disciplinary action up to and including termination.

| *Stanford Hospital and Clinics* | **Last Approval Date:**<br>September 2014 |
|---|---|
| **Name of Policy:**<br>Service Animals and Comfort/Emotional Support Dogs | **Page 6 of 10** |
| **Departments Affected:**<br>All Departments | |

**VI. RELATED DOCUMENTS:**
Disabled Accessibility and Services Policy
Disability Discrimination Grievance Policy

**VII. APPENDICES:**
A. Individualized Service Animal Assessment Tool

**VIII. DOCUMENT INFORMATION:**
A. Legal Authority/References
1. Americans with Disabilities Act of 1990 U.S.C. §12181 et seq.
2. 28 CFR §§ 35.104, 35.130, 35.136, 36.104, 36.208, 36.301, 36.302
3. The Rehabilitation Act of 1973, 2a USC §794
4. Cal. Civ. Code §54 — 55.32
5. Cal. Pen. Code §§365.5, 365.6
6. Unruh Civil Rights Act, Cal. Civ. Code §51

B. Author/Original Date
1. Dana Orquiza, March 7, 2014

C. Gatekeeper of Original Document
Administrative Manual Coordinators and Editors

D. Distribution and Training Requirements
1. This policy resides in the Administrative Manual of Stanford Hospital and Clinics
2. New documents or any revised documents will be distributed to Administrative Manual holders. The department/unit/clinic manager will be responsible for communicating this information to the applicable workforce members.

E. Review and Renewal Requirements
1. This policy will be reviewed and/or revised every three years or as required by change of law or practice.

F. Review and Revision History

G. Approvals
August 2014, Quality, Patient Safety & Effectiveness Committee
September 2014, SHC Medical Executive Committee
September 2014, SHC Board Credentials, Policies & Procedures Committee

| *Stanford Hospital and Clinics* | **Last Approval Date:** |
|---|---|
| | **September 2014** |
| **Name of Policy:** Service Animals and Comfort/Emotional Support Dogs | **Page 7 of 10** |
| **Departments Affected:** All Departments | |

*"This document is intended for use by staff of Stanford Hospital & Clinics.*

*No representations or warranties are made for outside use. Not for outside reproduction or publication without permission."*

| | |
|---|---|
| ***Stanford Hospital and Clinics*** | **Last Approval Date:**<br>September 2014 |
| **Name of Policy:**<br>Service Animals and Comfort/Emotional Support Dogs<br>**Departments Affected:**<br>All Departments | **Page 8 of 10** |

# Individualized Service Animal Assessment Tool
# (Appendix A)

Any decision to **exclude or remove a service animal** from Stanford Hospital & Clinics (SHC's) shall be made only after an *individualized assessment* completed by the department manager in collaboration with staff nurses, social work, physicians, advanced practice professionals and in consultation with other departments *as needed* including, but not limited to Infection Control, Guest Services and Risk Management.

**Assessment Date:** _____

**Dept. Manager Name/Designee:** _____

**Patient Name:**               **MRN:** _____

**Animal Being Assessed** *(Circle):*   Service Dog        Miniature Horse

**A. Check All Boxes That Apply to the Animal:**

1. Animal poses a **direct threat** to the health and safety of others

    ❑  Not housebroken; has had more than one accident

    ❑  Poor hygiene (malodorous, dirt, fleas)

    ❑  Illness (fever, vomiting, diarrhea, impaired ability to serve patient)

    ❑  Out of control / disruptive (barking, jumping, running, lunging, biting)

**Additional facts:**

_____

_____

| | Last Approval Date: |
|---|---|
| *Stanford Hospital and Clinics* | September 2014 |
| **Name of Policy:**<br>Service Animals and Comfort/Emotional Support Dogs | Page 9 of 10 |
| **Departments Affected:**<br>All Departments | |

 

2. If you have checked any boxes above, please answer the following:

    a. Nature of risk animal poses:

    b. Duration of the risk the animal poses:

    c. Severity of the risk:

    d. Probability that injury will occur:

    e. What reasonable modifications can be made?

3. Animal **fundamentally alters** SHC's operations, policies, practices and procedures

**Provide Facts Demonstrating a Fundamental Alteration:**

 

B. Check All Boxes that Apply to the <u>Patient/Handler/Owner</u>
- ❑ Refuses or is unable to control the animal (tether, harness, verbal commands, visual cues)

| | Last Approval Date: |
|---|---|
| **Stanford Hospital and Clinics** | **September 2014** |
| **Name of Policy:**<br>Service Animals and Comfort/Emotional Support Dogs | **Page 10 of 10** |
| **Departments Affected:**<br>All Departments | |

- ❑ Refuses or is unable to feed and care for the animal (ambulation, toileting)
- ❑ Refuses or does not designate / provide handler to control animal
- ❑ Does not have friends or family who can control and care for the animal